Lisa L. Paisola, Attorney Pro Se
1112 East Duffer Circle
North Salt Lake, Utah 84054
Tel: 801-397-3397

10 CIV. 8920

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
LISA PAISOLA

                        Plaintiff,

           -against-

GAP ADVENTURES, INC., V. GROUP,
V. SHIPS SHIP MANAGEMENT, V. SHIPS
LEISURE, CAPTAIN BENGT WIMAN.

                     Defendants.
----------------------------------------------------------x

**COMPLAINT CIVIL
and ADMIRALTY**

## JURY TRIAL DEMANDED

Plaintiff claims of the defendant damages upon the following causes of action:

### FIRST CAUSE OF ACTION AGAINST GAP ADVENTURES, INC.

1. The plaintiff is a citizen of the State of Utah.

2. Defendant GAP ADVENTURES, INC. (hereinafter "GAP") is a foreign corporation, and is authorized to do business in New York, and at all relevant times, did business in the State of New York.

3. The M/S EXPLORER (hereinafter "the vessel") is a passenger cruise ship which sailed to and from various foreign ports.

4. The jurisdiction of this Court of this first cause of action arises under and by virtue of the Court's admiralty jurisdiction, 28 U.S.C. §1331, and pursuant to this Court's

diversity jurisdiction, 28 U.S.C. §1332(a)(2), this being a claim for greater than $75,000.00, exclusive of costs and interest.

5. On or about November 11, 2007, plaintiff joined the vessel for a cruise thereon which was intended to last approximately nineteen (19) days.

6. From November 11, 2007 until at least, November 23, 2007 GAP owned the vessel in coastwise, inter-coastal and foreign commerce.

7. From November 11, 2007 until at least, November 23, 2007 GAP possessed the vessel in coastwise, inter-coastal and foreign commerce.

8. From November 11, 2007 until at least, November 23, 2007 GAP managed the vessel in coastwise, inter-coastal and foreign commerce.

9. From November 11, 2007 until at least, November 23, 2007 GAP controlled the vessel in coastwise, inter-coastal and foreign commerce.

10. From November 11, 2007 until at least, November 23, 2007 GAP operated the vessel in coastwise, inter-coastal and foreign commerce.

11. Prior to the voyage that commenced on November 11, 2007, defendant GAP invited the plaintiff to board the vessel.

12. Upon information and belief, and at all times hereinafter mentioned, defendant GAP, by its agents, servants, and/or employees, held out to the general public, including the plaintiff herein, that the vessel was reasonably safe to board.

13. On or about November 23, 2007, plaintiff was a passenger aboard the vessel.

14. On or about November 23, 2007, while the vessel was in navigable waters, plaintiff was caused to sustain the serious injuries more specifically set forth hereunder.

15. On or about November 23, 2007, plaintiff was caused to be injured through dangerous and unsafe conditions on the vessel and its tender and through the negligence of the vessel and its crew.

16. On or about November 23, 2007, the EXPLORER sank in the frigid waters off of the Antarctic and the plaintiff, and the other passengers, were caused to abandon the M/S EXPLORER to save their lives.

17. Plaintiff's injuries were caused by the negligence of the defendants by their agents, servants, workmen and employees and by defendants' breach of its obligations under the circumstances.

18. Solely by reason of the negligence of the defendants, as set forth above the plaintiff sustained shock, fear, fright and terror as a result of having to abandon ship and float upon the frigid waters of the Antarctic sustaining exposure, respiratory distress, bronchitis, pneumonia, acute stress disorder, post-traumatic stress disorder, and other psychological trauma the full extent of which injuries and the sequelae thereof are not yet fully known. The accident caused plaintiff to obtain in the past, and will cause plaintiff to obtain in the future, medical treatment, care and attention. In the past and the future plaintiff was, and will be, obliged to expend monies and incur obligations for medical care and attention. Plaintiff suffered, and will in the future suffer pains and mental anguish. Plaintiff in the past was, and will in the future be, disabled from performing usual duties, occupations and avocations.

19. For said injuries, plaintiff claims damages in a reasonable amount as determined by the trier of fact.

## SECOND CAUSE OF ACTION AGAINST V. GROUP

20. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if copied herein *in extenso*.

21. At all times hereinafter mentioned, Defendant V. GROUP (hereinafter GROUP) was a foreign corporation, and is authorized to do business in New York, and at all relevant times, did business in the State of New York.

22. At all times hereinafter mentioned, Defendant, "GROUP" was a foreign corporation, and at all relevant times, did business in the State of New York.

23. The M/V EXPLORER (hereinafter "the vessel") was a passenger cruise ship which sailed to and from various foreign ports.

24. The jurisdiction of this Court of this first cause of action arises under and by virtue of the Court's admiralty jurisdiction, 28 U.S.C. §1331, and pursuant to this Court's diversity jurisdiction, 28 U.S.C. §1332(a)(2), this being a claim for greater than $75,000.00, exclusive of costs and interest.

25. On or about November 11, 2007, plaintiff joined the vessel for a cruise thereon which was intended to last approximately nineteen (19) days.

26. From November 11, 2007 until at least, November 23, 2007 "GROUP" owned the vessel in coastwise, inter-coastal and foreign commerce.

27. From November 11, 2007 until at least, November 23, 2007 "GROUP" possessed the vessel in coastwise, inter-coastal and foreign commerce.

28. From November 11, 2007 until at least, November 23, 2007 "GROUP" managed the vessel in coastwise, inter-coastal and foreign commerce.

29. From November 11, 2007 until at least, November 23, 2007 "GROUP" controlled the vessel in coastwise, inter-coastal and foreign commerce.

30. From November 11, 2007 until at least, November 23, 2007 "GROUP" operated the vessel in coastwise, inter-coastal and foreign commerce.

31. Prior to the voyage which commenced on November 11, 2007, the defendant "GROUP" hired the crew aboard the "vessel".

32. Prior to the voyage which commenced on November 11, 2007, the defendant "GROUP" trained the crew aboard the "vessel'.

33. Prior to the voyage which commenced on November 11, 2007, the defendant "GROUP" managed the crew aboard the "vessel".

34. Prior to the voyage which commenced on November 11, 2007, the defendant "GROUP" controlled the crew aboard the "vessel".

35. Prior to the voyage which commenced on November 11, 2007, the defendant "GROUP", by its agents, servants, and/or employees, held out to the general public, including the plaintiff herein, that the vessel was reasonably safe and seaworthy.

36. On or about November 23, 2007, plaintiff was caused to be injured through dangerous and unsafe conditions on the vessel and its tender and through the negligence of the vessel and its crew.

37. Plaintiff's injuries were caused by the negligence of the defendants by their agents, servants, workmen and employees and by defendants' breach of its obligations under the circumstances.

38. Solely by reason of the negligence of the defendants, as set forth above plaintiff sustained shock, fear, fright and terror as a result of have abandon ship and float upon the frigid waters of the Antarctic sustaining exposure, respiratory distress, bronchitis, pneumonia, acute stress disorder, post-traumatic stress disorder, and other psychological trauma the full extent of which injuries and the sequelae thereof are not yet fully known. The accident caused plaintiff to obtain in the past, and will cause plaintiff to obtain in the future, medical treatment, care and attention. In the past and the future plaintiff was, and will be, obliged to expend monies and incur obligations for medical care and attention. Plaintiff suffered, and will in the future suffer pains and mental anguish. Plaintiff in the past was, and will in the future be, disabled from performing usual duties, occupations and avocations.

39. For said injuries, plaintiff claims damages in a reasonable amount as determined by the trier of fact.

## THIRD CAUSE OF ACTION AGAINST V. SHIPS SHIP MANAGEMENT

40. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if copied herein *in extenso*.

41. At all times hereinafter mentioned, Defendant V. SHIPS SHIP MANAGEMENT (hereinafter SHIP MANAGEMENT) was a foreign corporation, and is authorized to do business in New York, and at all relevant times, did business in the State of New York.

42. At all times hereinafter mentioned, Defendant, "SHIP MANAGEMENT" was a foreign corporation, and at all relevant times, did business in the State of New York.

43. The M/V EXPLORER (hereinafter "the vessel") was a passenger cruise ship which sailed to and from various foreign ports.

44. The jurisdiction of this Court of this first cause of action arises under and by virtue of the Court's admiralty jurisdiction, 28 U.S.C. §1331, and pursuant to this Court's diversity jurisdiction, 28 U.S.C. §1332(a)(2), this being a claim for greater than $75,000.00, exclusive of costs and interest.

45. On or about November 11, 2007, plaintiff joined the vessel for a cruise thereon which was intended to last approximately nineteen (19) days.

46. From November 11, 2007 until at least, November 23, 2007 "SHIP MANAGEMENT" owned the vessel in coastwise, inter-coastal and foreign commerce.

47. From November 11, 2007 until at least, November 23, 2007 "SHIP MANAGEMENT" possessed the vessel in coastwise, inter-coastal and foreign commerce.

48. From November 11, 2007 until at least, November 23, 2007 "SHIP MANAGEMENT" managed the vessel in coastwise, inter-coastal and foreign commerce.

49. From November 11, 2007 until at least, November 23, 2007 "SHIP MANAGEMENT" controlled the vessel in coastwise, inter-coastal and foreign commerce.

50. From November 11, 2007 until at least, November 23, 2007 "SHIP MANAGEMENT" operated the vessel in coastwise, inter-coastal and foreign commerce.

51. Prior to the voyage which commenced on November 11, 2007, the defendant "SHIP MANAGEMENT" hired the crew aboard the "vessel".

52. Prior to the voyage which commenced on November 11, 2007, the defendant "SHIP MANAGEMENT" trained the crew aboard the "vessel'.

53. Prior to the voyage which commenced on November 11, 2007, the defendant "SHIP MANAGEMENT" managed the crew aboard the "vessel".

54. Prior to the voyage which commenced on November 11, 2007, the defendant "SHIP MANAGEMENT" controlled the crew aboard the "vessel".

55. Prior to the voyage which commenced on November 11, 2007, the defendant "SHIP MANAGEMENT", by its agents, servants, and/or employees, held out to the general public, including the plaintiff herein, that the vessel was reasonably safe and seaworthy.

56. On or about November 23, 2007, plaintiff was caused to be injured through dangerous and unsafe conditions on the vessel and its tender and through the negligence of the vessel and its crew.

57. Plaintiff's injuries were caused by the negligence of the defendants by their agents, servants, workmen and employees and by defendants' breach of its obligations under the circumstances.

58. Solely by reason of the negligence of the defendants, as set forth above plaintiff sustained shock, fear, fright and terror as a result of have abandon ship and float upon the frigid waters of the antarctic sustaining exposure, respiratory distress, bronchitis, pneumonia, acute stress disorder, post-traumatic stress disorder, and other psychological trauma the full extent of which injuries and the sequelae thereof are not yet fully known. The accident caused plaintiff to obtain in the past, and will cause plaintiff to obtain in the future, medical treatment, care and attention. In the past and the future plaintiff was, and will be, obliged to expend monies and incur obligations for medical care and attention. Plaintiff

suffered, and will in the future suffer pains and mental anguish. Plaintiff in the past was, and will in the future be, disabled from performing usual duties, occupations and avocations.

59.   For said injuries, plaintiff claims damages in a reasonable amount as determined by the trier of fact.

## FOURTH CAUSE OF ACTION AGAINST V. SHIPS LEISURE

60.   Plaintiff repeats and re-alleges each of the foregoing paragraphs as if copied herein *in extenso*.

61.   At all times hereinafter mentioned, Defendant V. SHIPS LEISURE (hereinafter SHIP LEISURE) was a foreign corporation, and is authorized to do business in New York, and at all relevant times, did business in the State of New York.

62.   At all times hereinafter mentioned, Defendant, "SHIP LEISURE" was a foreign corporation, and at all relevant times, did business in the State of New York.

63.   The M/S EXPLORER (hereinafter "the vessel") is a passenger cruise ship which sails to and from various foreign ports.

64.   The jurisdiction of this Court of this first cause of action arises under and by virtue of the Court's admiralty jurisdiction, 28 U.S.C. §1331, and pursuant to this Court's diversity jurisdiction, 28 U.S.C. §1332(a)(2), this being a claim for greater than $75,000.00, exclusive of costs and interest.

65.   On or about November 11, 2007, plaintiff joined the vessel for a cruise thereon which was intended to last approximately nineteen (19) days.

66. From November 11, 2007 until at least, November 23, 2007 "SHIP LEISURE" owned the vessel in coastwise, inter-coastal and foreign commerce.

67. From November 11, 2007 until at least, November 23, 2007 "SHIP LEISURE" possessed the vessel in coastwise, inter-coastal and foreign commerce.

68. From November 11, 2007 until at least, November 23, 2007 "SHIP LEISURE" managed the vessel in coastwise, inter-coastal and foreign commerce.

69. From November 11, 2007 until at least, November 23, 2007 "SHIP LEISURE" controlled the vessel in coastwise, inter-coastal and foreign commerce.

70. From November 11, 2007 until at least, November 23, 2007 "SHIP LEISURE" operated the vessel in coastwise, inter-coastal and foreign commerce.

71. Prior to the voyage which commenced on November 11, 2007, the defendant "SHIP LEISURE" hired the crew aboard the "vessel".

72. Prior to the voyage which commenced on November 11, 2007, the defendant "SHIP LEISURE" trained the crew aboard the "vessel'.

73. Prior to the voyage which commenced on November 11, 2007, the defendant "SHIP LEISURE" managed the crew aboard the "vessel".

74. Prior to the voyage which commenced on November 11, 2007, the defendant "SHIP LEISURE" controlled the crew aboard the "vessel".

75. Prior to the voyage which commenced on November 11, 2007, the defendant "SHIP LEISURE", by its agents, servants, and/or employees, held out to the general public, including the plaintiff herein, that the vessel was reasonably safe and seaworthy.

76. On or about November 23, 2007, plaintiff was caused to be injured through dangerous and unsafe conditions on the vessel and its tender and through the negligence of the vessel and its crew.

77. Plaintiff's injuries were caused by the negligence of the defendants by their agents, servants, workmen and employees and by defendants' breach of its obligations under the circumstances.

78. Solely by reason of the negligence of the defendants, as set forth above plaintiff sustained shock, fear, fright and terror as a result of have abandon ship and float upon the frigid waters of the Antarctic sustaining exposure, respiratory distress, bronchitis, pneumonia, acute stress disorder, post-traumatic stress disorder, and other psychological trauma the full extent of which injuries and the sequelae thereof are not yet fully known. The accident caused plaintiff to obtain in the past, and will cause plaintiff to obtain in the future, medical treatment, care and attention. In the past and the future plaintiff was, and will be, obliged to expend monies and incur obligations for medical care and attention. Plaintiff suffered, and will in the future suffer pains and mental anguish. Plaintiff in the past was, and will in the future be, disabled from performing usual duties, occupations and avocations.

79. For said injuries, plaintiff claims damages in a reasonable amount as determined by the trier of fact.

## FIFTH CAUSE OF ACTION AGAINST CAPTAIN BENGT WIMAN

80.  Plaintiff repeats and re-alleges each of the foregoing paragraphs as if copied herein *in extenso*.

81.  At all times hereinafter mentioned, defendant CAPTAIN BENGT WIMAN (hereinafter "CAPTAIN") was employed by, under contract to or an assigned worker of "SHIP MANAGEMENT" while on the "vessel".

82.  At all times hereinafter mentioned, the defendant, "CAPTAIN" was employed by, under contract to or an assigned worker of "SHIP LEISURE" while on the "vessel".

83.  At all times hereinafter mentioned, the defendant, "CAPTAIN" was employed by, under contract to or an assigned worker of "GAP" while on the "vessel".

84.  The M/S EXPLORER (hereinafter "the vessel") was a passenger cruise ship which sailed to and from various foreign ports.

85.  That sometime prior to November 11, 2007 the "CAPTAIN" was assigned to the "vessel" by the defendant, "SHIP MANAGEMENT".

86.  That sometime prior to November 11, 2007 the "CAPTAIN" was assigned to the "vessel" by the defendant, "SHIP LEISURE".

87.  That sometime prior to November 11, 2007 the "CAPTAIN" was assigned to the "vessel" by the defendant, "GAP".

88.  The jurisdiction of this Court of this first cause of action arises under and by virtue of the Court's admiralty jurisdiction, 28 U.S.C. §1331, and pursuant to this Court's diversity jurisdiction, 28 U.S.C. §1332(a)(2), this being a claim for greater than $75,000.00, exclusive of costs and interest.

89. On or about November 11, 2007, plaintiff joined the vessel for a cruise thereon which was intended to last approximately nineteen (19) days.

90. Upon information and belief, at all the dates and times hereinafter mentioned, the defendant, "CAPTAIN" invited the plaintiff to board the vessel.

91. From November 11, 2007 until at least, November 23, 2007 the defendant, "CAPTAIN" was in control of the vessel in coastwise, inter-coastal and foreign commerce.

92. From November 11, 2007 until at least, November 23, 2007 the defendant, "CAPTAIN" managed the vessel in coastwise, inter-coastal and foreign commerce.

93. From November 11, 2007 until at least, November 23, 2007 the defendant, "CAPTAIN" managed the crew of the "vessel" while it was in coastwise, inter-coastal and foreign commerce.

94. From November 11, 2007 until at least, November 23, 2007 the defendant, "CAPTAIN" controlled the crew of the "vessel" while it was in coastwise, inter-coastal and foreign commerce.

95. On or about November 23, 2007, plaintiff was a passenger aboard the vessel.

96. From November 11, 2007 until at least, November 23, 2007 the defendant, "CAPTAIN" was in charge of the "vessel" when the passengers, including the plaintiff herein, were disembarked upon the open while the vessel was in coastwise, inter-coastal and foreign commerce.

97. From November 11, 2007 until at least, November 23, 2007 the defendant, "CAPTAIN" was in charge of the "vessel" and directed the passengers, including the plaintiff herein, to disembarked upon the open while the vessel was in coastwise, inter-coastal and foreign commerce.

98. On or about November 23, 2007, while the vessel was in navigable waters, plaintiff was caused to sustain the serious injuries more specifically set forth hereunder.

99. On or about November 23, 2007, plaintiff was caused to be injured through dangerous and unsafe conditions on the vessel and its tender and through the negligence of the defendant, "CAPTAIN", the vessel and its crew.

100. Plaintiff's injuries were caused by the negligence of the defendants by their agents, servants, workmen and employees and by defendants' breach of its obligations under the circumstances.

101. Solely by reason of the negligence of the defendants, as set forth above plaintiff sustained shock, fear, fright and terror as a result of have abandon ship and float upon the frigid waters of the Antarctic sustaining exposure, respiratory distress, bronchitis, pneumonia, acute stress disorder, post-traumatic stress disorder, and other psychological trauma the full extent of which injuries and the sequelae thereof are not yet fully known. The accident caused plaintiff to obtain in the past, and will cause plaintiff to obtain in the future, medical treatment, care and attention. In the past and the future plaintiff was, and will be, obliged to expend monies and incur obligations for medical care and attention. Plaintiff suffered, and will in the future suffer pains and mental anguish. Plaintiff in the past was, and will in the future be, disabled from performing usual duties, occupations and avocations.

102. For said injuries, plaintiff claims damages in a reasonable amount as determined by the trier of fact.

## SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

103.   Plaintiff repeats and re-alleges each of the foregoing paragraphs as if copied herein *in extenso*.

104.   On or about November 11, 2007, defendants, in consideration for a stipulated fare, undertook and agreed as a common carrier, pursuant to a written contract of carriage, to transport the plaintiff safely upon a voyage upon defendant's vessel, from the point of commencement, to the various ports as stated within the passenger contract, and to the port of discharge.

105.   Plaintiff paid the consideration demanded by defendants, and performed all obligations required under the terms of the passenger contract.

106.   Defendants failed and neglected to safely transport plaintiff as required by the passenger contract, thus breaching the contract of passage.

107.   As a direct consequence of defendants' failure to perform their obligations under the passenger contract, plaintiff was injured as previously described and is entitled to a return of her fare plus compensation for lost property and personal effects.

108.   Plaintiff claims damages on this cause of action in an amount to be determined by the trier of fact.

## SEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

109.  Plaintiff repeats and re-alleges each of the foregoing paragraphs as if copied herein *in extenso*.

110.  On or about November 11, 2007, the actions of the defendants, collectively and individually, acted in a grossly negligent and wanton manor which resulted in the damages sustained by the plaintiff herein while a passenger upon the "vessel".

111.  On or about November 11, 2007, the actions of the defendants, collectively and individually, acted in a reckless manner which resulted in the damages sustained by the plaintiff herein while a passenger upon the "vessel".

112.  On or about November 11, 2007, the actions of the defendants, collectively and individually, acted in a utter disregard for the safety and rights of the plaintiff which resulted in the damages sustained by the plaintiff herein while a passenger upon the "vessel".

113.  As a direct consequence of defendants' wanton, reckless, grossly negligent conduct and utter disregard for the safety and rights of the plaintiff while the plaintiff was a passenger upon the "vessel", the plaintiff is entitled to punitive damages as and against these defendants.

114.  Plaintiff claims punitive damages on this cause of action in an amount to be determined by the trier of fact.

**WHEREFORE**, the plaintiff prays that judgment be entered against the defendants for damages, on the First, Second, Third, Fourth, Fifth, Sixth and Seventh causes of action in an amount in an amount to be determined by the trier of fact, for pecuniary damages and

damages for pain and suffering suffered by the plaintiff, punitive damages and for such interest costs and counsel fees as the Court may deem just and proper.

Plaintiff demands trial by jury on all issues so triable.

**ADDITIONALLY**, plaintiff prays:

1. That citation issue against defendants and to appear and answer all the matters aforesaid;

2. That this Honorable Court enter judgment for plaintiff in accordance with the sums set forth as aforesaid together with interest, costs and counsel fees;

3. That judgment be entered against the defendants for compensatory damages in the amount found by the trier of fact, and for such other damages as the Court may determine to be due and owing upon the trial of this cause, and for such interest, costs, punitive damages and counsel fees as the Court may deem just and proper.

Dated: Salt Lake City, Utah　　　　　　　　　　　Lisa L. Paisola, Attorney Pro Se
November 17, 2010