USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC
DATE: 3/14/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LISA L. PAISOLA,

              Plaintiff,

- against -

GAP ADVENTURES, INC., et al.,

              Defendants.

**CORRECTED REPORT AND RECOMMENDATION**

**10 Civ. 8920 (PAC) (RLE)**

**To the HONORABLE PAUL A. CROTTY, U.S.D.J.:**

## I. INTRODUCTION

Plaintiff Lisa Paisola was a passenger on a cruise ship, M/S EXPLORER ("vessel"), sailing from Ushuaia, Argentina, when the boat hit ice and sank near the South Shetland Islands on November 23, 2007. The vessel was operated by Defendant GAP Adventures, Inc. ("GAP"). Paisola sustained physical and psychological injuries, which are the subject of this litigation. GAP now moves to dismiss this action based on *forum non conveniens*. For the reasons which follow, I recommend that GAP's motion be **DENIED**.

## II. BACKGROUND

On or about October 18, 2007, Paisola, a resident of North Salt Lake, Utah, purchased her ticket for the cruise through ITEX Canada, a company that purchased the ticket for passage from GAP. Def's Mot. 16. On November 11, 2007, Paisola boarded the vessel at Ushuaia for a cruise which was scheduled to last approximately nineteen (19) days. Compl. ¶ 5; Def's Mot. to Dismiss ("Def's Mot.") 2. On November 23, 2007, the vessel struck ice in the Antarctic region and subsequently sank. Compl. ¶ 16; Def's Mot. 2. Hours later, Paisola was rescued from one of the vessel's lifeboats. Paisola alleges she sustained physical and psychological injuries as a

result of the incident. Compl. ¶ 18; Def's Mot. 2. She claims multiple injuries, including post-traumatic stress disorder, bronchitis, acute stress disorder, respiratory distress, shock, fear, fright and terror. Compl. ¶ 18. She asserts that her need for medical treatment will continue but has not yet alleged the amount of damages being sought. *Id.* Paisola initially alleged negligence by GAP, V. Group, V. Ships Ship Management, V. Ships Leisure, and Captain Bengt Wiman in this Second[1] Complaint filed November 19, 2010. She has since dropped claims against all defendants except GAP. Pl's Opp'n 2.

GAP is a Canadian corporation with its headquarters in Toronto, Ontario. It maintains a booking office in New York City, which assists in promoting the cruises and assists passengers with their travel plans and booking on GAP-sponsored vacations. Pl's Opp'n to Mot. to Dismiss ("Pl's Opp'n") 3. GAP "was the entity that contracted with passengers for passage on the subject voyage of the M/S Explorer (vessel)." Def's Mot. 16. The vessel was owned by GAP Shipping Co. Limited of Barbados and managed by GAP Shipping Limited of Sweden. Def's Mot. 17. The vessel itself was flagged by and registered in the Republic of Liberia, which also conducted an investigation into the cause of the sinking. Def's Mot. 18, Pl's Opp'n 9. The investigation took place in Chile, Pl's Opp'n 9, the vessel's captain is a citizen of Sweden, and much of the crew resides in the Philippines. *Id.*

GAP's initial Motion to Dismiss included allegations of improper service of process, lack of *in personam* jurisdiction, improper parties, and *forum non conveniens*. GAP has withdrawn its claims of improper service and lack of personal jurisdiction and the remaining issue before this Court concerns GAP's argument based on *forum non conveniens. Id.*

---

[1] Paisola filed a Complaint relating to the same events here on November 11, 2008, but that Complaint was voluntarily dismissed without prejudice a month later. Def's Mot. 17, fn 6.

## III. DISCUSSION

### A.  Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court should draw all reasonable inferences in favor of the plaintiff, but the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the court must also apply a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original); *see Elektra Entertainment Group, Inc. v. Santangelo*, 2008 WL 4452393, at *2 (S.D.N.Y. Oct 1, 2008).

### B.  Applicable Substantive Law

In a diversity case, the court must determine the appropriate body of substantive law to be applied, including foreign law. GAP asserts that the parties are bound by the forum selection clause in the Ticket/Agreement, which stipulates that Canadian law governs the agreement and constitutes a binding contract between Paisola and GAP. That clause states that the agreement "shall be governed by the laws of Canada" and that each party "irrevocably submits to the exclusive jurisdiction of the Federal Court of Canada, at Toronto, Canada in respect of any action, proceeding or litigation of any kind relating in any way to this Ticket/Agreement." Mandel Declaration, ¶ 18, Exh. A, ¶ 17 ("Exh. A"). The agreement produced by GAP, however, was not signed by Paisola. Paisola disputes that she was ever provided a copy of an agreement

3

containing the clause, and asserts that her ticket was purchased through a Utah-based travel agency, not directly with GAP. Pl's Opp'n 11. Paisola argues the more appropriate body of law to be applied is United States maritime law, given the vessel sunk in international waters and GAP is doing business in New York. Pl's Opp'n 12. Because GAP has not shown that the Ticket/Agreement was ever presented to or signed by Paisola or that there was any understanding otherwise between the Parties as to a pre-selected forum to litigate disputes, the Court finds United States maritime law applies.

### C.     Forum *Non Conveniens*

The doctrine of forum *non conveniens* allows a court to exercise its discretion in dismissing an action where an alternate forum is more suited to hear the case based on factors weighing the interest of justice. Courts assume a "plaintiff's choice of forum will stand unless the defendant can demonstrate that reasons exist to afford it less deference." *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002) (citing *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 71 (2d Cir. 2001). For a case to be dismissed based on *forum non conveniens*, a defendant must show that 1) an adequate alternative forum exists and 2) private and public interest urge the court to consider dismissal. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243-44 (1981). Among the private interests are the convenience of the parties and potential witnesses in a case, access to evidence, and the availability of compulsory process for unwilling witnesses. *See Gilbert.*, 330 U.S. at 508.

#### 1.     Alternative Adequate Forum

In assessing whether an adequate alternate forum exists for a case, the court considers whether "the defendant is 'amenable to process' in the other jurisdiction." *Piper*, 454 U.S. at 255, n. 22 (quoting *Gilbert*, 330 U.S. at 505-06). It is rare for a court to determine that an alternate forum is inadequate. If, however, the alternate forum would refuse to adjudicate the

4

matter, dismissal would be inappropriate. *Id.* Unfavorable law in the alternative forum is generally found not adequate to deny dismissal, unless it can be shown that the "remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Id.* at 254. In such a case, "the unfavorable change in law may be given substantial weight [and] the district court may conclude that dismissal would not be in the interests of justice." *Id.* A court may also dismiss a case when "trial in the [plaintiff's] chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." *Piper, supra*, at 241 (citing in part *Koster, supra*, at 524).

GAP is not only amenable to process elsewhere but is encouraging this Court to refuse to exercise jurisdiction in order that this case may be heard in Canada. Paisola does not argue that she would suffer hardship by a judgment in Canada derived from unfavorable law, but argues that her claim would be time-barred under Canadian law because of a two-year statute of limitations under the Ontario Limitations Act of 2002. Pl's Opp'n 13. GAP does not dispute the limitations claimed by Paisola but asserts that it has no knowledge of this Act. Reply Br. 9. Assuming Paisola's assertion to be true, based on this factor alone, the Court determines an alternative adequate forum does not exist since Paisola would have no forum to bring a claim in Canada.

### 2.    Balancing of Public and Private Interests

In the alternative, assuming that an adequate forum does exist, the Court addresses the second prong of the *forum non conveniens* analysis, balancing the applicable public and private interests. The weighing of these factors "reflects a court's assessment of a 'range of

considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality.'" *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 429 (2007) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996).

### a.   Private Interest Factors

The *Gilbert* court expanded upon some of the private interests to be considered by courts in determining dismissal of a case, including

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility [sic] of a judgment if one is obtained.

*Gilbert*, 330 U.S. at 508. The balancing of factors requires this Court to consider the harm to GAP of having the case litigated in Paisola's chosen forum versus the inconvenience to Paisola of litigating in Canada. GAP asserts that this Court should dismiss this action because New York has no connection with this dispute nor any interest in having it resolved in this forum. Def's Mot. 16. Paisola argues that no evidence she intends to rely on is in Canada (Pl's Opp'n 7) and has stated that she will not be seeking discovery outside of the report produced by the Republic of Liberia's Commissioner for Maritime Affairs. Pl's Opp'n 9. GAP asserts however, that it does not concede liability, and intends to undertake a rigorous discovery process. It claims many documents relating to any contracts or tending to prove ownership of the vessel would likely be found in their headquarters in Toronto or at GAP's offices in London with their English counsel who investigated the sinking or V. Ship Leisure Limited's offices. Def's Mot. 18, 22-23. Documents may also be found on Isle of Man or in Monaco. *Id.* at 18.

To the extent that the Court's determination turns on the disbursement of information

6

relevant to the instant case, Paisola's position is persuasive in that little of the pertinent information she would potentially be seeking is actually located in Canada. Moreover, relevant documents can be transported to this forum if necessary, and GAP has given no reason why it would be unable to respond to such requests. As in *DiRienzo*, "[D]efendants have failed to explain how transporting the documents or copies of them would be 'oppressive' or 'vexatious.'" *DiRienzo*, 294 F.3d at 30.

GAP argues that most of the witnesses who would testify or produce documents relating to the incident reside in Canada or other foreign nations, including members of the crew of the vessel. Def's Mot. 18, 23. It argues that the costs of obtaining witnesses to appear for trial or depositions could potentially be burdensome since no pertinent witnesses other than Paisola have been identified who reside in the United States, and no witness has been identified in Canada except GAP. To the extent that witnesses must travel from Canada to New York, "[s]uch travel today is not burdensome in terms of cost or time." *DiRienzo*, 294 F.3d at 30. According to the Parties, a substantial number of potential witnesses reside in Sweden and the Philippines, and the documentary evidence is in Chile and Liberia. Canada appears to provide no more favorable forum than New York. Indeed, it may be that New York is more accessible than other possible forums when international travel is required.

It is also likely that the transfer of this case to Canada would be more burdensome and expensive for Paisola, who is proceeding *pro se* in this case. Litigating a case and preparing for a trial in a foreign nation would be far more onerous for her as a *pro se* litigant of "modest means" (Pl's Opp'n 7) than it would be for GAP, a multinational corporation which has a presence, and does business, in New York. *See Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 147 (2d Cir. 2000). The Court recognizes that GAP disputes how burdensome

7

litigation in Canada would be for Paisola, but provides no examples or evidence to support its position. The suggestion that Paisola's purchasing of a ticket through a Canadian company demonstrates her financial capability to litigate in that forum is meritless. Paisola bought the ticket from a travel agency in her home state of Utah. Pl's Opp'n 8. The fact that the purchase was administered by a Canadian company has no bearing on her ability - or lack thereof - to pursue litigation there. While GAP would appear to bear additional costs by having to litigate in New York, they are comparatively less than Paisola's costs to litigate in Canada given GAP's status and available resources.

The fact that GAP is advocating dismissal in order for a foreign court to assume jurisdiction and deny Paisola, a United States citizen and plaintiff, her chosen forum requires that this Court give further consideration to Paisola's choice of forum. While it appears that New York bears little relationship to the Parties or underlying facts of this case, it is an appropriate forum to hear the case given that Paisola is entitled to a presumption of convenience when choosing her home forum, and the home forum "of an American citizen for *forum non conveniens* principles is any United States court." *Wiwa v. Royal Dutch Petroleum, Co.*, 226 F.3d 88, 103 (2d Cir. 2000). The Supreme Court has held that "[a]pplication of *forum non conveniens* principles to a suit by a United States citizen against a foreign respondent brings into force considerations very different from those in suits between foreigners." *Swift & Co. Packers v. Compania Colombiana Del Caribe*, 339 U.S. 684, 697 (1950). Where the number of plaintiffs is few, "[i]n any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown." *Koster v. (American) Lumbermans Mut. Cas. Co.*, 330 U.S. 518, 524 (1947). Where there are only two parties in a dispute, a plaintiff's choice of forum should rarely be disturbed

8

absent unreasonable inconvenience or oppression to the defendant. *Id.* GAP has failed to demonstrate such inconvenience. Simply because Paisola is not a resident of New York does not presume her choice of forum is dispensable or inadequate. *Guidi*, 224 F.3d at 146-47 ("[T]he states where Plaintiffs reside are not relevant to the *forum non conveniens* analysis in this case.") As Paisola correctly argues, her home forum "is a United States court, such as the courts of the Southern District of New York." *Id.* at 147. For this reason and those above, I recommend that GAP's motion be **DENIED**.

        b.        **Public Interest Factors**

A court must also consider factors of public interest and weigh them against competing private interests. Included among these factors are administrative difficulties and local interests. Parties should be judged by a jury of their peers in a matter that is connected to their community. *Piper*, 454 U.S. at 241-43. "There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of law, and in law foreign to itself." *Gilbert*, 330 U.S. at 508-09. In *Piper*, the court determined that the burdens imposed outweighed plaintiff's choice of forum. *Piper*, 454 U.S. at 243-44, 260 ("[I]t would (also) be unfair to burden citizens with jury duty when the (plaintiff's chosen forum) has little connection with the controversy," particularly where an alternate forum may have a "substantial interest in the outcome of the litigation.") *Id.* at 260. Unlike the situation in *Piper*, however, the proposed alternate forum, Canada, has no greater or more substantial interest in the outcome of this litigation than New York. None of the subsequent investigations took place there and the critical witnesses do not reside there. *See* Def's Reply 1-2. I recommend that the Motion to Dismiss be **DENIED**.

## IV. CONCLUSION

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Paul A. Crotty, 500 Pearl Street, Room 735, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED: March 9, 2012**
**New York, New York**

                    **Respectfully Submitted,**

                    */s/ Ronald L. Ellis*

                    **The Honorable Ronald L. Ellis**
                    **United States Magistrate Judge**

Copies of this Report and Recommendation were sent to:

COUNSEL FOR PLAINTIFF
Thomas P. Giuffra, Esq.
Rheingold, Valet, Rheingold & McCartney, LLP
113 37th Street
New York, NY 10170

COUNSEL FOR DEFENDANT
Michael E. Unger
Freehill Hogan & Mahar LLP
80 Pine St.
New York, NY 10005-1759